IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

MARKEE ROSS and CHADRICK DAVIS                                             PLAINTIFFS

v.                            Case No. 2:17-cv-00031 KGB

CITY OF HELENA-WEST HELENA,
ARKANSAS, *et al.*                                                          DEFENDANTS

## OPINION AND ORDER

Before the Court are a motion for summary judgment and a motion to grant motion for summary judgment or, alternatively deem facts admitted filed by defendants the City of Helena-West Helena ("the City") and Joshua Cross, in his individual and official capacity as a former police officer with the City (Dkt. Nos. 29, 33). The City and Officer Cross seek summary judgment on the claims filed by plaintiffs Markee Ross and Chadrick Davis alleging violations of their constitutional rights as guaranteed by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution through suit brought pursuant to 42 U.S.C. § 1983 and corresponding claims under the Arkansas Civil Rights Act ("ACRA").

### I.    Factual Background

Unless otherwise noted, the following facts are taken from defendants' statement of undisputed material facts and plaintiffs' response to defendants' statement of undisputed material facts (Dkt. Nos. 30; 36).

The parties dispute the facts leading up to the initial stop of Mr. Davis's vehicle. At 6:55 p.m., on November 25, 2013, Corporal Amos Bryant of the Helena-West Helena Police Department ("HWHPD"), while patrolling, noticed a vehicle (Dkt. No. 30, ¶ 1). Defendants contend that the vehicle was traveling in the on-coming lane with its lights off (*Id.*). According to defendants, the vehicle then pulled into a gas station, and Officer Bryant made contact with the

driver, Mr. Davis, and asked for his driver's license, proof of insurance, and car registration (*Id.*, ¶ 2). Plaintiffs contend that Officer Bryant did not have probable cause to stop Mr. Davis's car and that Officer Bryant initially told Mr. Davis only that he was driving down the wrong side of the road (Dkt. No. 36, ¶ 1). Joshua Cross, at the time an officer with the HWHPD, arrived to assist and also made contact with Mr. Davis (Dkt. No. 30, ¶ 3).

The parties also dispute what happened next. Defendants contend that both Officer Bryant and Officer Cross could smell the odor of marijuana coming from the vehicle (*Id.*, ¶ 4). Plaintiffs contend that it is questionable as to whether either person actually smelled marijuana and that Officer Bryant never told Mr. Davis that he smelled marijuana (Dkt. No. 36, ¶ 3). The parties agree that Mr. Davis does not know if marijuana has ever been smoked in the vehicle he was driving (Dkt. Nos. 30, ¶ 5; 36, ¶ 5). Plaintiffs respond that, while Mr. Davis did not know if marijuana had ever been smoked in the vehicle, that is not the same as saying that the vehicle had an odor of marijuana coming from it (Dkt. No. 36, ¶ 5). Plaintiffs also note that Mr. Davis testified in his deposition that "[t]here was nothing found. Not even -- not a seed, not a leaf, nothing" (*Id.*). Defendants then represent that Officer Bryant made contact with the passenger, Mr. Ross, and asked if there were any illegal drugs in the vehicle; Mr. Ross said no (Dkt. No. 30, ¶ 6). Plaintiffs respond that Officer Bryant did not ask Mr. Ross about any drugs being in the car and contend that the facts have already revealed no drugs were found (Dkt. No. 36, ¶ 6).

Both Mr. Ross and Mr. Davis were asked to step out of the vehicle, they did, and both were patted down for weapons (Dkt. No. 30, ¶ 7). Initially, Mr. Ross and Mr. Davis were conversing behind the vehicle, so Officer Bryant asked Officer Cross to separate the two while the vehicle was searched (*Id.*, ¶ 8). Mr. Davis testified at his deposition that Officer Cross arrived, walked up to Mr. Davis's vehicle, said "I smell weed. Get your ass out of the truck," pulled Mr. Davis out of

2

the truck, and started putting handcuffs on him (Dkt. No. 30-9, at 30).   Mr. Ross testified at his deposition:   "Officer Cross said -- looked in the truck and said, 'I smell marijuana.   Both of y'all got y'alls CDL [commercial driver's license],' like that.   And he ended up snatching [Mr. Davis] out and putting him in handcuffs and taking him back there, but he told me to look for the insurance papers" (Dkt. No. 30-10, at 15).   Mr. Ross further testified that Officer Cross put him in handcuffs and then put him in the car with a dog (*Id.*, at 21).

According to defendants, it was raining, so Officer Cross placed Mr. Ross in the front seat of his patrol unit, advising him that the K-9 was in the car and to lean forward, and then went to assist Officer Bryant with the vehicle search (*Id.*, ¶ 9).   Plaintiffs take issue with paragraph 9 of defendants' statement of facts and contend that the fact that it was raining was not the reason that Mr. Ross was placed in the patrol unit (Dkt. No. 36, ¶ 8).   Officer Cross was a K-9 officer with the HWHPD, and his K-9, Gunner, was in the back seat of his patrol unit (Dkt. No. 30, ¶ 10).   Officer Bryant and Officer Cross then heard Mr. Ross say he had been bitten by Gunner (*Id.*, ¶ 11).   While sitting in the front seat of Officer Cross's patrol unit, Gunner, who was in the back seat, managed to get his snout around the cage in Officer Cross's patrol unit and bit Mr. Ross, once, on the upper right side of his back (*Id.*, ¶ 12).   Mr.  Ross was immediately removed from the patrol unit and asked if he needed medical attention, to which he replied yes (*Id.*, ¶ 13).   Mr. Ross then came back and said the bite was not that bad (*Id.*, ¶ 14).   Lt. Travis Wallace with the HWHPD was notified (*Id.*, ¶ 15).   Mr. Ross then came back and said that he was going to the emergency room to get a shot (*Id.*, ¶ 16).   Mr. Ross was evaluated at the local emergency room and received shots and medication but no stitches (*Id.*, ¶¶ 17–18).   Then the Chief of Police for the HWHPD sent an officer to the local ER to pay for all of Mr. Ross's medical bills associated with the bite (*Id.*, ¶ 19).   HWHPD paid for Mr. Ross's ER visit, follow-up care with a physician, physical therapy, and for

Mr. Ross to see a counselor (*Id.*, ¶ 20).  Mr. Ross was not charged with anything as a result of the stop of Mr. Davis on November 25, 2013 (*Id.*, ¶ 21).

The parties also dispute the circumstances surrounding Mr. Davis's detention.  Defendants contend that Mr. Davis was detained for suspicion of DWI, and field sobriety tests were conducted (*Id.*, ¶ 22).  Defendants contend that the field sobriety tests revealed that Mr. Davis had vertical nystagmus, and while he displayed 0/8 possible clues on the Walk and Turn Test, he displayed 1/4 possible clues on the One Leg Stand Test (*Id.*, ¶ 23).  Defendants further contend that, because Mr. Davis had vertical nystagmus and displayed 1/4 possible clues on one of the field sobriety tests, Troy Faughn, a drug recognition expert with the HWHPD was called to perform further testing, but Mr. Davis refused to submit to additional testing (*Id.*, ¶ 24).  According to defendants, Mr. Davis's mother took possession of his vehicle (*Id.*, ¶ 25).

Plaintiffs agree that Mr. Davis was detained for suspicion of DWI (Dkt. No. 36, ¶ 13). However, plaintiffs contend that there was no evidence of DWI and no objective reason to believe that Mr. Davis should have been detained (*Id.*).  Plaintiffs further dispute paragraphs 23 and 24 of defendants' statement of facts on the basis that the information is an opinion and is not factual and has no factual basis (*Id.*, ¶ 14).  Plaintiffs take issue with paragraph 25 on the basis that it suggests that Rosetta Davis was allowed to drive away in the vehicle (*Id.*, ¶ 15).  According to plaintiffs, Mr. Davis testified that he drove away in the vehicle after declining the so-called Troy Faughn test (*Id.*).

The parties agree that Mr. Davis was arrested for and charged with Careless and Prohibited Driving, DWI-Drugs, and Refusal to Submit by Officer Bryant (Dkt. No. 30, ¶ 26).  Mr. Davis does not know anything about how officers with the HWHPD are hired or trained and has no law

enforcement training himself (*Id.*, ¶ 27).  Mr. Ross does not have any first-hand knowledge about how the HWHPD trains its officers (*Id.*, ¶ 28).

Officer Bryant began working for the HWHPD on January 23, 2012, and during the course of his background check, no disqualifiers were found (*Id.*, ¶ 29).  Officer Bryant was issued the HWHPD Standard Operating Procedures Manual on January 25, 2012, and he signed an acknowledgment indicating that he understood that he was expected to read the entire Manual (*Id.*, ¶ 30).  Defendants contend that Officer Bryant took and signed the law enforcement code of ethics, swearing to "respect the constitutional rights of all to liberty, equality, and justice" (*Id.*, ¶ 31).  Plaintiffs dispute this statement, arguing that it is questionable because the document is undated (Dkt. No. 36, ¶ 17).  Officer Bryant completed the 480-hour basic police course put on by the Arkansas Law Enforcement Training Agency on September 28, 2012, and was issued his Basic Certificate as a Certified Law Enforcement Officer (Dkt. No. 30, ¶ 32).  Officer Bryant resigned from the HWHPD on January 1, 2015 (*Id.*, ¶ 33).

Officer Cross began working for the HWHPD on February 22, 2013, and during the course of his background check, no disqualifiers were found (*Id.*, ¶ 34).  Prior to his employment with the HWHPD, Officer Cross had worked for two years with the Jonestown, Mississippi, Police Department as a patrol officer and for two years with the Coahoma County Sheriff's Department as a Deputy (*Id.*, ¶ 35).  Defendants contend that Officer Cross was issued the HWHPD Standard Operating Procedures Manual on January 25, 2012, and he signed an acknowledgment indicating that he understood that he was expected to read the entire Manual (*Id.*, ¶ 35).  Plaintiffs dispute this on the basis that it holds to be true that Officer Cross was issued the Standard Operating Procedures long before he was ever hired (Dkt. No. 36, ¶ 16).  Defendants also contend that Officer Cross took and signed the law enforcement code of ethics, swearing to "respect the constitutional

rights of all to liberty, equality, and justice" (Dkt. No. 30, ¶ 37).  Plaintiffs dispute this statement, arguing that it is questionable as to the date not being a part of the document (Dkt. No. 36, ¶ 20). Officer Cross completed the 400-hour basic police course put on by the Mississippi Law Enforcement Officers Training Academy on June 24, 2010, and was issued his Professional Certificate showing that he was qualified to act as a Mississippi Law Enforcement Officer that same day (Dkt. No. 30, ¶ 38).  Officer Cross successfully completed 200 hours of a dual-purpose narcotic, patrol, and tracking dog handler course in Mississippi at the K-9 Training Center on May 20, 2011 (*Id.*, ¶ 39).  Officer Cross successfully completed a 36-hour K-9 Handler Training Course at the Arkansas Law Enforcement Training Academy on October 18, 2013 (*Id.*, ¶ 40).  Officer Cross resigned from the HWHPD on January 6, 2014 (*Id.*, ¶ 41).

The HWHPD conducted an immediate investigation into the dog bite of Mr. Ross, determining that, while the bite was accidental, Officer Cross had violated the HWHPD K-9 policy, insomuch as the policy states "the K-9 is never to be left unattended in the patrol car.  If it is necessary for the handler to be away from the vehicle the K-9 should be with the handler" (*Id.*, ¶ 42).  Officer Cross was disciplined due to the policy violation (*Id.*, ¶ 43).  Officer Cross was also reassigned to the patrol division and stripped of his K-9 responsibilities (*Id.*, ¶ 44).  The HWHPD has official written policies that dictate that all stops, detentions, searches, seizures, and arrests are constitutionally sound, and it is the official written policy of the HWHPD that the "laws of arrest, search and seizure are defined by the United States Constitution, Arkansas Statutes, and judicial interpretation to protect individual rights of all persons.  It is the policy of the Helena-West Helena Police Department to always use legal justification and means for any arrest, search or seizure" (*Id.*, ¶ 45).  The official written policy of the HWHPD states that "law enforcement officers will always remember that he/she has sworn to uphold the law, abide by the law, and protect the rights

of all people as afforded by the constitution of the United States and the constitution of the State of Arkansas" (*Id.*, ¶ 46).  The official written policy of the HWHPD regarding training is that it is "one of the most important responsibilities in any law enforcement . . . department," and that the HWHPD "recognizes the importance of training and is committed to providing the best training available to all personnel" (*Id.*, ¶ 47).  The HWHPD training policy provides that "the HWHPD shall be commensurate with minimum requirements as established by the Executive Commission on Law Enforcement Standards and Training and the Arkansas Crime Information Center" (*Id.*, ¶ 48).

## II.   Parties And Claims

Mr. Ross and Mr. Davis identify several defendants in their operative complaint (Dkt. No. 2).  Along with naming the City and Officer Cross, Mr. Ross and Mr. Davis also name as defendants:  (1) Virgil Green, Chief of Police in his official capacity as the successor of Uless Wallace, former Chief of Police; and (2) Don R. Etherly; Vivian Holder; Joe St. Columbia, Sr.; Adrian Messina; John H. Huff, Jr.; Christopher Franklin; Larry Brown; Monica Davis; Wanda Crockett; and Ever Jean Ford, all in their official capacities as members of the City Council (Dkt. No. 2, ¶¶ 5–10).

Claims against individuals in their official capacities are the equivalent of claims against the entity for which those individuals work or that they represent, so in this case the City.  *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).  The City is also a named defendant.  As a result, all of the official-capacity claims against other defendants who work for or represent the City are duplicative.  This Court agrees that only the City and Officer Cross individually are the named real parties in interest.

Further, the undisputed record evidence demonstrates that defendants are state actors, not federal actors.  As a result, the Fifth Amendment's Due Process Clause is not implicated in this case, and defendants are entitled to summary judgment in their favor as to Mr. Ross and Mr. Davis's claims premised on alleged Fifth Amendment violations.  *Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *States v. Greene*, 995 F.2d 793, 795 (8th Cir. 1993).

Neither Mr. Ross nor Mr. Davis was a convicted prisoner at the time of the alleged events about which they complain in this lawsuit, based on the undisputed record evidence.  The Eighth Amendment does not apply to pretrial detainees.  *See Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010).  Therefore, the Eighth Amendment does not apply to plaintiffs' claims, and defendants are entitled to summary judgment in their favor as to Mr. Ross and Mr. Davis's claims premised on alleged Eighth Amendment violations.

A response to a motion for summary judgment is not the proper mechanism for amending a complaint.  *See N. State Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004) ("Thus, while we recognize that the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment.").  Neither Mr. Ross nor Mr. Davis seek leave amend their complaint, and the Court will not consider new claims asserted for the first time in response to a timely, ripe motion for summary judgment.  In their complaint, for their causes of action, Mr. Ross and Mr. Davis assert:

26.     By recklessly using excessive force against the plaintiffs, the individual defendant police officers violated his rights as guaranteed by the Fourth Amendment to the United States Constitution as made actionable by 42 U.S.C. § 1983 and caused his injuries.

27.     By engaging in the negligent use of excessive force against the plaintiffs, the individual defendants and the City of Helena-West Helena violated his common law rights as made actionable in this court by 28 U.S.C. § 1367 and caused them injuries.

8

28.     By failing to properly train, supervise and discipline police offers within its employ, the City of Helena-West Helena violated the plaintiffs' rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution as made actionable against it by 42 U.S.C. § 1983 and caused them injuries.

(Dkt. No. 2, ¶¶ 26-28).  The only federal claims presented in this case are Mr. Ross and Mr. Davis's claims against Officer Cross individually regarding the validity of Mr. Ross and Mr. Davis's detention and handcuffing; Mr. Ross's claim against Officer Cross individually regarding the dog bite; and Mr. Ross and Mr. Davis's claims against the City for failure to train and supervise.  The Court will address Mr. Ross and Mr. Davis's federal claims, and then the Court will address claims under 28 U.S.C. § 1367.

### III.    Legal Standard

#### A.    Summary Judgment

Summary judgment is proper if there is no genuine issue of material fact for trial. *UnitedHealth Group Inc. v. Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56).  Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In ruling on a motion for summary judgment '[t]he district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'"  *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923 (8th Cir. 2004) (internal citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Johnson Regional Medical Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d

854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986).

### B.     Liability Under 42 U.S.C. § 1983

Section 1983 provides a cause of action against any "person" who, acting "under color of" state law, deprives the plaintiff of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Municipalities and their employees are suable "persons" under § 1983, and the employees can be sued in both their official and individual capacities. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690 (1978); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). A suit against a municipal employee in his or her official capacity is treated as a suit against the municipality for which the employee works. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Hess v. Ables*, 714 F.3d 1048, 1054 (8th Cir. 2013). A municipality is not liable under § 1983 unless there is an unconstitutional act by one of its employees and its official policy or custom caused the act. *Monell*, 436 U.S. at 694; *Webb v. City*

10

*of Maplewood*, 889 F.3d 483, 487 (8th Cir. 2018); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("[T]o establish the liability of an official acting in his official capacity, the plaintiff must prove that a policy or custom of the city caused the alleged violation." (cleaned up and citation omitted)).

### C.     Qualified Immunity

Officers sued under § 1983 in their individual capacities can raise qualified immunity as a defense.  This doctrine "shields a government official from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known."  *Partlow v. Stadler*, 774 F.3d 497, 501 (8th Cir. 2014). Courts use a two-step inquiry to determine whether qualified immunity applies:  "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct."  *Id.* Plaintiffs must meet both steps to defeat qualified immunity, and courts can begin the analysis with either step.  *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015).

### D.     ACRA Claims

To the extent Mr. Ross and Mr. Davis bring claims pursuant to the ACRA, the ACRA prohibits persons, acting under color of state law, from depriving any person of any rights, privileges, or immunities secured by the Arkansas Constitution.  Ark. Code Ann. § 16-123-105; *see also West v. Atkins*, 487 U.S. 42 (1988).  The ACRA expressly requires that courts look to federal civil rights law for guidance.  *See Island v. Buena Vista Resort*, 103 S.W.3d 671, 675–76 (Ark. 2003).  As relevant, here, the Arkansas Supreme Court has stated that Article 2, § 15 of the Arkansas Constitution is "virtually identical to the Fourth Amendment" and will be interpreted "in the same manner as the United States Supreme Court interprets the Fourth Amendment."  *Rainey*

*v. Hartness*, 5 S.W.3d 410, 415 (Ark. 1999).  As a result, this Court determines that its analysis of Mr. Ross and Mr. Davis's federal constitutional claims under § 1983 is equally applicable to their state constitutional claims under the ACRA.  This is the position taken by the City and Officer Cross (Dkt. No. 31, at 9–10), and Mr. Ross and Mr. Davis do not dispute this position in their summary judgment briefing.

## IV.    Analysis Of Claims Against Officer Cross

Qualified immunity shields government officials from suits for damages under § 1983 if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hamner v. Burls*, 937 F.3d 1171, 1175 (8th Cir. 2019), *as amended* (Nov. 26, 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  "The immunity is an *immunity from suit*, not merely from liability." *Id.*

Qualified immunity is designed "to avoid 'subject[ing] government officials either to the costs of trial or to the burdens of broad-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982)).  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Anderson ex rel. Anderson v. City of Minneapolis*, 934 F.3d 876, 881 (8th Cir. 2019) (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)).

"Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law.  But if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment." *Olson v.*

*Bloomberg*, 339 F.3d 730, 735 (8th Cir. 2003) (quoting *Greiner v. City of Champlin*, 27 F.3d 1346, 1352 (8th Cir. 1994)).

The court must follow a two-step inquiry in a qualified immunity analysis: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Jackson v. Stair*, 944 F.3d 704, 710 (8th Cir. 2019) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009)). If a plaintiff cannot satisfy both prongs, then the defendant is entitled to qualified immunity. *See Correia v. Jones*, 943 F.3d 845, 847 (8th Cir. 2019); *see also Davis v. Chase Cty. Sch. Dist. No. 536*, No. 7:17-CV-5007, 2019 WL 1506690, at *4 (D. Neb. Apr. 5, 2019) ("To withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated the plaintiff's clearly established right.").

Courts "have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). Under the second prong of the qualified immunity analysis, "the plaintiff must demonstrate the law was clearly established." *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, —— U.S. ——, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citation omitted). The relevant question is whether a reasonable officer would have fair warning that his conduct was unlawful. *Jackson v. Stair*, 944 F.3d 704, 711 (8th Cir. 2019).

A plaintiff must identify either "controlling authority" or "a robust consensus of cases of persuasive authority" that placed the constitutional question "beyond debate" at the time of the alleged violation. *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019). "A plaintiff need not always identify a case directly on point, but controlling authority or a robust consensus of cases of persuasive authority must put the statutory or constitutional question beyond debate." *Anderson*, 934 F.3d at 881 (quoting *Swearingen v. Judd*, 930 F.3d 983, 987 (8th Cir. 2019)). The state of the law should not be examined at a high level of generality. *Kelsay*, 933 F.3d at 979.

## A. Traffic Offense, Detention, And Handcuffing

Defendants argue that Officer Cross is entitled to summary judgment on Mr. Davis's arrest claim because Officer Cross did not detain or arrest Mr. Davis (Dkt. No. 31, at 10–11). Plaintiffs respond that Officer Cross illegally arrested Mr. Davis because Officer Cross lacked probable cause (Dkt. No. 37, at 4). Defendants further contend that Officer Cross did not seize Mr. Ross (Dkt. No. 31, at 13–14). Plaintiffs argue in response that it was unlawful for Officer Cross to detain and handcuff Mr. Ross (Dkt. No. 37, at 5). The Court concludes that that defendants are entitled to qualified immunity on plaintiffs' Fourth Amendment claims against Officer Cross in his individual capacity.

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause." *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008–09 (8th Cir. 2017) (internal quotation marks omitted) (quoting *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011)). Probable cause exists when the totality of facts known at the time of the arrest would justify a reasonable person in believing that the individual has committed or is committing an offense. *Id.* at 1009. "Arguable probable cause exists even whe[n] an officer mistakenly arrests a suspect believing [the

arrest] is based in probable cause if the mistake is objectively reasonable." *Id.* (internal quotation marks omitted) (quoting *Borgman*, 646 F.3d at 523); *see also Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) ("[S]o long as he is reasonable, the governing standard for a Fourth Amendment unlawful arrest claim 'is not probable cause in fact but arguable probable cause . . . that is, whether the officer should have known that the arrest violated plaintiff's clearly established right.'" (quoting *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996))).

Probable cause that a driver has committed any traffic violation, no matter how minor, provides sufficient justification under the Fourth Amendment to stop a vehicle and handcuff and arrest the driver. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354–55 (2001). The officer's subjective motivation is irrelevant. *Brigham City v. Stuart*, 547 U.S. 398 (2006). Even if the officer was influenced by an impermissible motive, a traffic stop does not violate the driver's rights under the Fourth Amendment to be free from unreasonable seizures, as long as the circumstances, viewed objectively, justified the seizure. *Id.*; *Whren v. United States*, 517 U.S. 806, 813 (1996).

If an officer's suspicions become heightened during the course of a routine traffic stop, the officer may be justified in expanding the scope of the investigation. *United States v. Coleman*, 700 F.3d 329, 335 (8th Cir. 2012) ("[I]f the officer develops reasonable suspicion that other criminal activity is afoot, the officer may expand the scope of the encounter to address that suspicion."). More specifically, "[i]f during a traffic stop, an officer develops a reasonable, articulable suspicion that a vehicle is carrying contraband, he has justification for greater intrusion unrelated to the traffic offense." *United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994).

Even absent the additional reason, an officer may order both the driver and passenger to exit the vehicle in the interests of officer safety during a routine traffic stop. *Maryland v. Wilson*, 519 U.S. 408, 413–15 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 111–12 (1977).

Additionally, the Supreme Court has observed that, during a routine traffic stop, police officers "may order out of a vehicle both the driver and any passengers [and] perform a 'patdown' of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous." *Knowles v. Iowa*, 525 U.S. 113, 118 (1998).  For the police to use handcuffs during a *Terry* stop, "the Fourth Amendment requires some reasonable belief that the suspect is armed and dangerous or that the restraints are necessary for some other legitimate purpose, evaluated on the facts of each case." *El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 457 (8th Cir. 2011).

"The test of probable cause is not the articulation of the policeman's subjective theory but the objective view of the facts." *White*, 448 F.2d at 254 (quoting *Dodd v. Beto*, 435 F.2d 868, 870 (5th Cir. 1970), *cert. denied*, 404 U.S. 845 (1971)).  Accordingly, "an officer may rely on information provided by other officers and all the information known to a team of officers involved in the investigation to provide justification for a stop." *United States v. Ortiz-Monroy*, 332 F.3d 525, 529 (8th Cir. 2003) (citing *United States v. Robinson*, 119 F.3d 663, 666–67 (8th Cir. 1997)).

It is well-settled law in this circuit that both a passenger and a driver are seized during a *Terry* stop of a vehicle.  *United States v. Oliver*, 550 F.3d 734, 737 (8th Cir. 2008).  If an officer acts lawfully in detaining the driver, he acts lawfully in concurrently detaining the passenger. *Waters v. Madsen*, 921 F.3d 725, 739 (8th Cir. 2019).  Further, the Supreme Court has observed that it is "reasonable for passengers to expect that a police officer at the scene of a crime, arrest, or investigation will not let people move around in ways that could jeopardize his safety." *Brendlin v. California*, 551 U.S. 249, 258 (2007).

In this case, Officer Bryant believed that he observed Mr. Davis driving on the wrong side of the road and initiated a traffic stop.  Defendants contend that the vehicle was traveling in the on-coming lane with its lights off (Dkt. No. 30, ¶ 1).  According to defendants, the vehicle then

pulled into a gas station, and Officer Bryant made contact with the driver, Mr. Davis (*Id.*, ¶ 2). Plaintiffs agree that Officer Bryant initially told Mr. Davis only that he was driving down the wrong side of the road (Dkt. No. 36, ¶ 1). Officer Cross arrived to assist and also made contact with Mr. Davis (Dkt. No. 30, ¶ 3).

On this basis alone, Officer Bryant and Officer Cross had arguable probable cause for Mr. Davis's detention, pat-down for weapons, handcuffing, and arrest under the Fourth Amendment. *See Atwater*, 532 U.S. at 354–55. Officer Cross also cited officer safety as a reason for handcuffing Mr. Ross and Mr. Davis. *See El-Ghazzawy*, 636 F.3d at 457. Because the officers had arguable probable cause to detain and handcuff the driver, Mr. Davis, the officers had arguable probable cause to detain and handcuff the passenger, Mr. Ross. *See Brendlin*, 551 U.S. at 258; *Waters*, 921 F.3d at 739. Under the circumstances, even construing the record evidence in favor of plaintiffs, the Court concludes that defendants are entitled to qualified immunity on plaintiffs' Fourth Amendment claims against Officer Cross in his individual capacity.

### B.      Smell Of Marijuana

The parties dispute whether Officer Bryant and Officer Cross smelled marijuana at the scene. Defendants contend that both Officer Bryant and Officer Cross smelled marijuana coming from Mr. Davis's vehicle (Dkt. No. 30, ¶ 4). Plaintiffs argue that it is questionable whether the officers actually smelled marijuana and that Officer Bryant never told Mr. Davis that he smelled marijuana (Dkt. No. 37, ¶ 3). For the reasons discussed below, the Court concludes that Officer Cross's belief that he smelled marijuana provides an additional basis to support arguable probable cause for Officer Cross's detention and handcuffing of Mr. Ross and Mr. Davis and provides an additional basis to grant defendants qualified immunity on plaintiffs' Fourth Amendment claims against Officer Cross in his individual capacity.

17

A law enforcement officer may detain a person for investigation without probable cause to arrest if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in the light of the totality of the circumstances. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *United States v. Green*, 691 F.3d 960, 963 (8th Cir. 2012). "It is well settled that, under the Fourth Amendment, [t]he scope of a detention must be carefully tailored to its underlying justification and that the investigatory methods employed [during a detention] should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *El-Ghazzawy*, 636 F.3d at 459 (internal quotations and citations omitted). The inquiry deals with probabilities, not hard certainties, *see United States v. Cortez*, 449 U.S. 411, 418 (1981), and it need not rule out innocent conduct, *Navarette v. California*, 572 U.S. 393, 403 (2014). Reasonable suspicion is based on commonsense judgments about human behavior. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). "Reasonable suspicion does not, however, exist solely on the basis of an officer's hunch." *United States v. Griffith*, 533 F.3d 979, 984 (8th Cir. 2008).

"An investigative detention may turn into an arrest if it lasts for an unreasonably long time or if it is too intrusive." *Seymour v. City of Des Moines*, 519 F.3d 790, 796 (8th Cir. 2008) (internal quotations and citations omitted). If a seizure escalates into an arrest, the arrest must be supported by probable cause. *United States v. Bloomfield*, 40 F.3d 910, 916 (8th Cir. 1994). A seizure may become a *de facto* arrest when a law-enforcement officer's conduct is more intrusive than necessary; the detention involves delay unnecessary for legitimate investigation; police conduct engenders fear and humiliation; or the officer transports the suspect to another location, isolates him from others, confines him to a police car, handcuffs him, or subjects the suspect to unnecessary

18

delays.  *United States v. Maltais*, 403 F.3d 550, 556 (8th Cir. 2005) (investigative detention may become *de facto* arrest if officers use unreasonable force or if "it lasts for an unreasonably long time, but there is no rigid time limit on an investigatory detention"); *United States v. Bloomfield*, 40 F.3d 910, 916–17 (8th Cir. 1994).

The smell of marijuana can support, at a minimum, a finding of reasonable suspicion to detain a suspect.  *See United States v. Barry*, 394 F.3d 1070, 1078 (8th Cir. 2005) (finding that officer who smelled marijuana and air freshener inside vehicle "had, at a minimum, reasonable suspicion to detain" the suspect); *United States v. Gipp*, 147 F.3d 680, 685 (8th Cir. 1998) (holding that officer had particularized and objective basis for suspecting individual had recently engaged in criminal activity after smelling burnt marijuana emanating from individual's clothes and car); *see also United States v. Chauncey*, 420 F.3d 864, 870–71 (8th Cir. 2005) (finding that probable cause existed to arrest driver when marijuana was discovered on passenger because evidence, including the smell of marijuana, indicated that "drug-related activity in the van was open and notorious"); *United States v. Reed*, 733 F.2d 492, 505 (8th Cir. 1984) (finding that sight and smell of marijuana supported probable cause to arrest suspect).

Police use of handcuffs can be a use of force.  *Muehler v. Mena*, 544 U.S. 93, 99 (2005). Police are justified in using handcuffs during a *Terry* stop when they have a reasonable suspicion that a suspect is armed and dangerous.  *El-Ghazzawy*, 636 F.3d at 457.  The Eighth Circuit has held that it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction because weapons and violence are frequently associated with drug transactions.  *United States v. Bustos-Torres*, 396 F.3d 935, 943 (8th Cir. 2005).

Facts must be viewed in the light most favorable to the nonmoving party only if a dispute is genuine. *Scott v. Harris*, 550 U.S. 372 (2007). Predicate facts that will defeat summary judgment based on qualified immunity "include only the relevant circumstances and the acts of the parties themselves, and not the conclusions of others about the reasonableness of those actions." *Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000); *see Levan v. George*, 604 F.3d 366, 369 (7th Cir. 2010) ("Even if the undisputed facts showed that the officers had made a reasonable error when they arrested [plaintiff], qualified immunity would be available, though not a judgment on the merits."); *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (party seeking to defeat summary judgment must substantiate allegations with sufficient probative evidence permitting finding in his favor based on more than speculation or conjecture). The Supreme Court has repeatedly emphasized "that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Further, the Constitution "does not guarantee that only the guilty will be arrested." *Baker v. McCollan*, 443 U.S. 137, 145 (1979).

Here, both Officer Bryant and Officer Cross reported smelling marijuana. Officer Bryant wrote in his incident report that "I asked the unidentified driver for his drivers license, proof of insurance, and car registration, I could smell scent of Marijuana coming from the vehicle from my training at ALTEA from a controlled burn simulation allows me to detect such a scent. . . . I was advised by Lt.Wallace that Mr. Davis had vertical nystagmus with my training from Aleta I knew that was dealing with drugs" (Dkt. No. 30-1, at 2). Officer Bryant also wrote a statement noting that "Cpl. Cross advised me that he smelled marijuana and we needed to search the vehicle" (Dkt. No. 30-2, at 1). Officer Cross wrote in an officer statement:

> Upon my arrival I spoke with Cpl. Bryant and asked him what he needed me to do and that was to get the drive insurance for him. While there I smelled a loud odor

> coming from the person and the vehicle.  I then turned to Cpl. Bryant and told him
> what I smelled coming from the vehicle.  I then returned to the vehicle and told the
> drive what I had and asked him to existed the vehicle.  Once out of the vehicle I
> told the diver whom was Chadrick Davis what I smell coming from the vehicle and
> from himself.  Which appear to be Marijuana and for officer safety.  Mr. Davis was
> also told that he will be detain upon further investigation.

(Dkt. No. 30-3, at 1).  Mr. Davis was subsequently charged with Careless and Prohibited Driving,

DWI-Drugs, and Refusal to Submit (Dkt. No. 30, ¶ 26).

Plaintiffs do not dispute that Officer Cross reported smelling marijuana upon arriving on

the scene.  According to Mr. Davis's testimony about when Officer Cross arrived:

> A.      He opened the door, got me out of the car and put handcuffs on me. Didn't
> say nothing. That's the only thing he said. "I smell weed. Get your ass out." Then
> five minutes later I was in handcuffs.
>
> Q.      Okay.
>
> A.      It wasn't five. It was two -- a minute later I was in handcuffs.

(*Id.*, at 31).  Mr. Ross also testified about the first thing he heard regarding the conversation

between law enforcement and Mr. Davis:  "Officer Cross said -- looked in the truck and said, 'I

smell marijuana.  Both of y'all got y'all's CDL,' like that." (Dkt. No. 30-10, at 14–15).  Thus, both

Mr. Davis and Mr. Ross testified that Officer Cross announced that he smelled marijuana at the

scene.

In *New v. Denver*, 787 F.3d 895 (8th Cir. 2015), the plaintiff bringing § 1983 claims

challenged the grant of qualified immunity to a defendant officer who claimed to have identified

two marijuana leaves which ultimately did not test positive for controlled substances; plaintiff

argued the claim was objectively unreasonable. *Id.* at 897–98.  The Eighth Circuit, examining "the

facts known to the arresting officer at the time of the arrest," was not convinced that the arresting

officer should be denied qualified immunity because he was either "plainly incompetent" or

"knowingly violate[d] the law."  *Id.* at 901.  In reaching this conclusion, the Eighth Circuit

considered several factors.   First, the officer's extensive training and experience in drug interdiction of over 20 years supported his strong belief that he had found a controlled substance in an automobile, and this determination was likely to be objectively reasonable, though of course not infallible.  *Id.*  In *New*, the officer generally described the two leaves that he identified as marijuana leaves; his description, while inconclusive, was not contradicted by other evidence.  *Id.* Second, the officer knew that both plaintiff and his brother had prior arrests for marijuana possession.  *Id.*  The court recognized that this fact, while not conclusive, objectively reinforced the arresting officer's belief that the leaves he found in the car were marijuana.  *Id.*  Third, the court determined that the arresting officer's actions after finding the leaves were consistent with the routine police work by an officer who genuinely believed he had found a controlled substance because the officer placed the leaves in a sack and sent them to the crime lab for testing after arresting the person in possession.  *Id.*  Finally, the court considered that there was no evidence that the arresting officer had any prior encounters with plaintiff or his brother or was pursuing an unrelated investigation.  *Id.*  For these reasons, the *New* court determined that undisputed facts were consistent with the arresting officer reacting spontaneously to what he found in an unplanned search and that, although the officer may have been mistaken, there was no hint that the officer knowingly violated the Fourth Amendment.

In another case in this Circuit, the district court concluded that a plaintiff failed to establish a genuine dispute of material fact about an officer's claim that he smelled marijuana.  *Akins v. City of Columbia*, No. 2:15-CV-04096-NKL, 2016 WL 4126549 (W.D. Mo. August 2, 2016).  In *Akins*, the officer smelled what he believed to be marijuana after pulling over and talking with the plaintiff.  *Id.*, at *1.  The court observed that the officer had been a police officer for five years and had had training.  *Id.*, at *1 n.2.  The plaintiff argued that he had not smoked or ingested marijuana

that day and that he did not smell marijuana in his car at the time of the traffic stop.  *Id.*  However, the plaintiff admitted that many other substances smell like marijuana and that he possibly did have marijuana on his person or in his car at the time.  *Id.*  The plaintiff also had bloodshot eyes, shaky hands, was acting nervously, and placed an unknown item in his pocket.  *Id.*, at *9.  A substance that appeared to be marijuana was ultimately found in the plaintiff's car.  *Id.*, at *1 n.2.  On this evidence, the court concluded that no reasonable juror could find that the officer was lying when he said he believed he smelled marijuana and that the plaintiff therefore had not created a genuine dispute of material fact concerning the officer's belief.  *Id.*

Similarly, this Court concludes that there is no genuine dispute of material fact concerning Officer Cross's belief that he smelled marijuana.  According to the deposition testimony of Mr. Ross and Mr. Davis, Officer Cross reported smelling marijuana upon arriving at the scene, and soon thereafter he and the other officers detained and handcuffed Mr. Ross and Mr. Davis for officer safety.  Further, both Officer Cross and Officer Bryant reported in their police reports that they observed a smell or "loud odor" which they reported to be marijuana (Dkt. Nos. 30-1, at 2; 30-3, at 1).  Both officers had been trained to recognize the smell of marijuana.  Additionally, Officer Davis reported that, upon performing a field sobriety test, Mr. Davis had "[p]inkish looking eyes with visible blood vessels" and exhibited vertical nystagmus (Dkt. No. 30-1, at 3).  Nothing in the record suggests that Officer Cross was lying about his belief that he smelled marijuana, even if his belief may have been mistaken.

The Court therefore concludes that plaintiffs have not established a genuine dispute of material fact sufficient to defeat summary judgment.  Officer Cross had, at a minimum, reasonable suspicion to detain plaintiffs on the basis of his belief that he smelled marijuana.  *See Barry*, 394 F.3d at 1078 (finding that officer who smelled marijuana and air freshener inside vehicle "had, at

a minimum, reasonable suspicion to detain" the suspect); *Gipp*, 147 F.3d at 685 (holding that officer had particularized and objective basis for suspecting individual had recently engaged in criminal activity after smelling burnt marijuana emanating from individual's clothes and car).  It was not objectively unreasonable for Officer Cross to handcuff plaintiffs because a reasonable officer who believed he smelled marijuana coming from Mr. Davis's truck could believe that it was necessary to detain and handcuff Mr. Ross and Mr. Davis for officer safety.  Officer Cross is therefore entitled to qualified immunity to the extent that plaintiffs claim that they were unconstitutionally detained and to the extent that plaintiffs claim Officer Cross's use of handcuffs constituted excessive force.

Plaintiffs' arguments and suggestions that the officers did not actually smell marijuana or acted pretextually do not convince the Court that defendants' motion for summary judgment should be denied.  Plaintiffs contest whether Mr. Davis's truck smelled like marijuana and argue that it is questionable whether either officer actually smelled marijuana (Dkt. No. 36, ¶ 3).  Mr. Davis testified that "if you know you don't smoke weed, you know you're not going to smell no weed in my truck" (Dkt. No. 30-9, at 43).  He further testified that he is not ever around anyone who smokes marijuana to his knowledge, that he is not around people when they smoke marijuana, that he does not recall being around anyone who had smoked marijuana in his presence on the day of the stop, and that he did not know of anyone he had been around that day who smelled of marijuana (*Id.*, at 41).  However, whether Mr. Davis's truck actually smelled like marijuana is immaterial because the existence of probable cause, or in this case arguable probable cause, turned on Officer Cross's belief that he smelled marijuana.  *See New*, 787 F.3d at 900.  Officer Cross "may have been mistaken, but there is no hint that he was knowingly violating the Fourth Amendment."  *Id.* at 901.  Similarly, the fact that the officers did not actually find marijuana in

Mr. Davis's truck does not bear on Officer Cross's belief that he smelled marijuana.  Because the Constitution "does not guarantee that only the guilty will be arrested," the fact that Mr. Ross and Mr. Davis were not in possession of marijuana "is largely irrelevant."  *Baker v. McCollan*, 443 U.S. 137, 145 (1979).

Mr. Davis also testified that HWHPD officers regularly claim to smell marijuana as pretext to search vehicles.  According to Mr. Davis's deposition:

> And with that particular group of people, everybody know that that's the first thing they want to do when they want to see -- they'll tell an old woman they smell weed if they feel like you've got something in your car that they want to find.  They feel like that's probable cause enough to give them enough reason.  If I say, "I smell weed," that's enough reason for me to find out what you got in your car.

(Dkt. No. 30-9, at 43).  Mr. Davis's generalized claim about HWHPD officers, however, is unsupported by any record evidence and does not bear on the specific issue of whether Officer Cross was lying or acting pretextually when he reported that he smelled marijuana with respect to Mr. Ross and Mr. Davis.

The Court recognizes the factual distinctions between this case and the cases discussed above, but these distinctions are not substantial enough to defeat qualified immunity here.  For instance, in *New*, the Eighth Circuit considered the fact that the arresting officer knew that the arrestee had prior arrests for marijuana possession.  787 F.3d at 901.  Here, Mr. Davis testified that he had been arrested prior to November 2013 but never booked in a jail or convicted, and the record does not reveal that his prior arrest was for a drug offense (Dkt. No. 30-9, at 19–20).  Mr. Ross testified that he had been arrested for felony fleeing in 2016, but the record does not reveal that he had been arrested prior to November 2013 (Dkt. No. 30-10, at 10–11).  The record also does not indicate that any HWHPD officers believed Mr. Ross or Mr. Davis had prior drug offenses.  Additionally, Mr. Ross testified that another officer on the scene, Lt. Travis Wallace,

did not like Mr. Ross because of a woman (Dkt. No. 30-10, at 15).  Mr. Ross testified that he had

been over at the woman's house when Lt. Wallace arrived in a regular car with his gun and began

banging on the door to such an extent that it scared Mr. Ross (*Id.*).  However, these distinctions do

not lead the Court to conclude that defendants' motion for summary judgment should be denied,

even if plaintiffs did not have prior drug offenses and if there was personal history between Mr.

Ross and another nonparty HWHPD officer.

    The Eighth Circuit in *New* further considered that the arresting officer's actions after

finding what he believed were marijuana leaves were consistent with the police work by an officer

who genuinely believed he had found a controlled substance.  787 F.3d at 901.  The arresting

officer in *New* put the leaves in a sack, arrested the person in possession, and sent the leaves to the

crime lab for controlled substance testing.  *Id.*  Here, Mr. Davis testified that Officer Cross reported

smelling marijuana, forced Mr. Davis out of his truck, and handcuffed him within one minute (Dkt.

No. 30-9, at 31).  The officers then proceeded to place Mr. Ross and Mr. Davis in separate patrol

cars and search Mr. Davis's truck without the aid of Officer Cross's K-9 unit who was trained to

detect narcotics.  An investigative report from HWHPD concluded that the correct decision would

have been for Officer Cross to use his K-9 unit to "do the job for [which] he was trained, which is

to find narcotics" (Dkt. No. 30-8, at 15).  However, it is not this Court's role to "second-guess

whether alternative actions by police officers might conceivably have been available."  *Estate of

Morgan v. Cook*, 686 F.3d 494, 497 (8th Cir. 2012).  Instead, the relevant inquiry is whether Officer

Cross acted objectively unreasonably.  Here, Officer Cross's actions were not so inconsistent with

the police work of an officer who genuinely believed he had found a controlled substance to defeat

summary judgment.

Further, *Akins* involved a nervous-looking arrestee with bloodshot eyes and shaking hands who placed an unknown item in his pocket which later appeared to be marijuana.  2016 WL 4126549, at *1.  Here, Officer Bryant reported that Mr. Davis's eyes appeared pinkish and displayed vertical nystagmus, but nothing in the record indicates that plaintiffs appeared nervous or shaky, and the officers never found drugs in the possession of either plaintiff or in Mr. Davis's car.  However, as the *Akins* court recognized, an officer's reasonable belief that he smells marijuana is sufficient to establish probable cause even if the substance is not ultimately proven to be marijuana.  *Id.*, at *10.  Although the officers did not find marijuana, no evidence in the record indicates that Officer Cross was lying or acting pretextually when he reported smelling marijuana, and plaintiffs do not dispute that, when he arrived on the scene, Officer Cross said he smelled marijuana.

On the undisputed facts in this case, this Court concludes that an objectively reasonable police officer with Officer Cross's training and experience could have reasonably believed that he smelled marijuana in Mr. Davis's car, giving HWHPD, at a minimum, reasonable suspicion to detain Mr. Ross and Mr. Davis.  Additionally, it was not objectively unreasonable for Officer Cross to place plaintiffs in handcuffs based on his belief that he smelled marijuana.  Plaintiffs have not cited this Court to a case in which an arresting officer was denied qualified immunity in analogous circumstances, and this Court has found none.  More than evidence of a mistake is required to deny a public official qualified immunity from § 1983 damage liability.

### C.  Mr. Ross's Dog-Bite Claim

Plaintiffs claim that Officer Cross violated Mr. Ross's Fourth Amendment rights "[b]y recklessly using excessive force against the plaintiffs" (Dkt. No. 2, at 4).  Plaintiffs argue that Officer Ross placed Mr. Ross in the patrol car with a K-9 unit, which they contend was against the

law (Dkt. No. 37, at 7).  Defendants argue that the accidental biting of Mr. Ross does not constitute

a seizure for Fourth Amendment purposes (Dkt. No. 31, at 11).  Defendants further argue that

Officer Cross is entitled to qualified immunity because it cannot be said that Officer Cross acted

in violation of existing precedent such that his placing of Mr. Ross in the patrol unit with the K-9

was beyond debate (*Id.*, at 15).

### 1. Whether Officer Cross Committed A Constitutional Violation With Respect To The K-9

To constitute a "seizure" under the Fourth Amendment, there must be a willful or

intentional application of physical force, as determined by the "officer's objective behavior," or

the plaintiff's submission to the police officer's show of authority.  *Atkinson v. City of Mountain*

*View*, 709 F.3d 1201, 1208 (8th Cir. 2013).  Negligently inflicted harm is "categorically"

insufficient to support a § 1983 excessive force claim.  *Kingsley v. Hendrickson*, 576 U.S. 389

(2015).

A person is seized by the police and thus entitled to challenge the government's action

under the Fourth Amendment when the officer, by means of physical force or show of authority,

terminates or restrains his freedom of movement through means intentionally applied to that

person.  Thus, an unintended person may be the object of the detention, so long as the detention is

willful and not merely the consequence of an unknowing act.  *Brendlin*, 551 U.S. at 254.  In short,

a seizure occurs when a person is "stopped by the very instrumentality set in motion or put in place

in order to achieve that result."  *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989); *see also Moore*

*v. Indehar*, 514 F.3d 756, 760 (8th Cir. 2008) (noting that "bystanders are not seized for Fourth

Amendment purposes when struck by an errant bullet in a shootout" because they were not the

intended object of the seizure, in contrast to a case of mistaken identity).

If a seizure occurred, a claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other "seizure" of a person is properly analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than under a substantive due process standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Objective unreasonableness is 'judged from the perspective of a reasonable officer on the scene,' in light of 'the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Wilson v. Lamp*, 901 F.3d 981, 989 (quoting *Graham*, 490 U.S. at 396). In considering whether an officer's use of force was reasonable, courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "Force may be objectively unreasonable when a plaintiff does not resist, lacks an opportunity to comply with requests before force is exercised, or does not pose an immediate safety threat." *Wilson*, 901 F.3d at 989 (citing *Smith*, 586 F.3d at 581). The court may also consider the result of the force. *Smith v. Kansas City, Missouri Police Dep't*, 586 F.3d 576, 581 (8th Cir. 2009).

"[R]eview of excessive force claims involving police dogs is properly governed by the general standard established in *Graham* rather than the deadly force standard of [*Tennessee v. Garner*, 471 U.S. 1 (1985)]." *Kuha v. City of Minnetonka*, 365 F.3d 590, 598 (8th Cir. 2003), *abrogated on other grounds by Szabla v. City of Brooklyn Park*, 486 F.3d 385 (8th Cir. 2007) (en banc).

The question before the Court is whether Officer Cross violated Mr. Ross's constitutional right to be free from excessive force when Officer Cross placed Mr. Ross in the front seat of a

patrol car and Officer Cross's K-9 dog bit Mr. Ross from the back seat of the car, maneuvering around a barrier between the seats.  Defendants represent that it was raining, so Officer Cross placed Mr. Ross in the front seat of the patrol car and advised Mr. Ross that the K-9 was in the car and to lean forward (Dkt. No. 30, ¶ 9).  Plaintiffs contend that the fact that it was raining was not the reason that Officer Cross placed Mr. Ross in the police car (Dkt. No. 36, ¶ 8).  Mr. Ross also testified at his deposition that he thought Officer Cross "had put me in the car with somebody else, because the dog didn't bark or nothing. . . .  I could hear like something moving behind me so when I turn around to look and see did they put me in the car with somebody else, [Gunner] was on me like" (Dkt. No. 30-10, at 23).

Here, drawing all reasonable inferences in favor of Mr. Ross, the record indicates that he was not suspected of a serious crime, did not pose an immediate threat to anyone, and did not attempt to resist or evade arrest.  Defendants contend that the officers smelled the odor of marijuana coming from Mr. Davis's vehicle (Dkt. Nos. 30, ¶ 4).  However, nothing in the record indicates that Officer Cross suspected Mr. Ross had committed a serious crime, and Mr. Ross was never charged with a crime.  Additionally, Mr. Ross was compliant and stepped out of the vehicle when asked.  The officers frisked Mr. Ross for weapons and found none.  Officer Cross handcuffed Mr. Ross and put him in the police car (Dkt. No. 30-10, at 21–22).  At no point did Mr. Ross attempt to evade arrest.

The dog bite also resulted in Mr. Ross receiving injuries.  Mr. Ross initially reported that he needed medical attention but that the bite was not that bad (Dkt. No. 30, ¶¶ 13–14).  Mr. Ross was evaluated at the local emergency room and received shots and medication but no stitches (*Id.*, ¶¶ 17–18).  Mr. Ross received counseling and was ultimately diagnosed with post-traumatic stress disorder (Dkt. No. 30-10, at 35).

Plaintiffs argue that Officer Cross violated city policy and that, had Officer Cross followed the city's policy, Mr. Ross would not have been bitten by the dog (Dkt. No. 37, at 9).  According to the HWHPD investigative report of the incident, Officer Cross placed Mr. Ross in a police car with an unattended K-9 dog, in violation of HWHPD policy, and with an inadequate barrier between the front and back seats (Dkt. No. 30-8, at 15).  The HWHPD K-9 policy states that "the K-9 is never to be left unattended in the patrol car.  If it is necessary for the handler to be away from the vehicle the K-9 should be with the handler" (*Id.*).  The investigative report also found that Officer Cross was using the wrong cage for his 2006 Dodge Charger, which left a six-inch space between the seat and support beam and allowed Gunner to access the front passenger's seat (*Id.*).  As the investigative report concludes, rather than search Mr. Davis's vehicle for drugs while Mr. Ross sat in the patrol car with an unattended K-9, "[t]he correct decision would have been to let Gunner, do the job for he was trained, which is to find narcotics" (*Id.*).  The Court recognizes that "[c]onduct by a government official that violates some state statutory or administrative provision is not necessarily constitutionally unreasonable."  *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993).  Instead, "the issue is whether the government official violated the Constitution or federal law, not whether he violated the policies of a state agency."  *Id.*  Officer Cross's purported violations of HWHPD policy, therefore, do not bear on the reasonableness of his actions.

The Court need not decide whether Officer Cross's actions violated the Fourth Amendment because the Court concludes below that, assuming without deciding that Officer Cross did violate the Constitution, Mr. Ross's specific alleged constitutional right in this case was not clearly established.

2.      **Whether The Alleged Constitutional Violation Was Clearly Established**

Here, defendants argue that Officer Cross is entitled to qualified immunity because his conduct of placing Mr. Ross in the front seat of a patrol car with a K-9 dog in the back seat did not constitute a constitutional violation and was not clearly established as unconstitutional (Dkt. No. 31, at 15).  Plaintiffs respond that the law on use of force and use of canines is well established and could lead a reasonable jury to conclude that the Officer Cross's use of force was excessive, unnecessary, and disproportionate to the offenses (Dkt. No. 37, at 7).

Even if the Court assumes without deciding that Officer Cross violated Mr. Ross's constitutional right to be free from excessive force by placing Mr. Ross in a patrol car with an unattended K-9 unit who subsequently bit Mr. Ross, the Court concludes that this right was not clearly established to the degree of specificity which the Supreme Court and Eighth Circuit law require to defeat a claim of qualified immunity.  This Court must examine "whether the violative nature of *particular* conduct is clearly established."  *Kelsay*, 933 F.3d at 979 (quoting *Mullinix*, 577 U.S. at 12).  "[P]olice officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue."  *Id.* at 980 (quoting *Kisela*, 138 S. Ct. at 1153).

There is no doubt that Mr. Ross had a right to be free from excessive force generally. *Chambers v. Pennycook*, 641 F.3d 898, 908 (8th Cir. 2011).  However, the question before the Court is whether existing Eighth Circuit precedent squarely governed the issue of whether it constituted excessive force for an officer to place a suspect in the front seat of a police car with a K-9 dog in the back seat, with some form of barrier around which the dog maneuvered and bit the suspect.  Plaintiffs do not identify such precedent, and the Court finds no case squarely governing the issue either.  The Eighth Circuit has previously held that it did not constitute excessive force for an officer to keep his dog off-leash while pursuing a suspect because it was not objectively

unreasonable for the officer to keep the dog off-leash in order to keep both of the officer's hands free. *Dennen v. City of Duluth*, 350 F.3d 786, 792 (8th Cir. 2003). The Eighth Circuit has also held that "a jury could properly find it objectively unreasonable to use a police dog trained in the bite and hold method without first giving the suspect a warning and opportunity for peaceful surrender." *Kuha*, 365 F.3d at 598. However, the Court's research has found no case, and the parties cites this Court to no case, in which the Eighth Circuit or any district court within the Eighth Circuit has ever concluded that it constitutes excessive force to place a suspect in a police car with an unaccompanied K-9 dog, with the suspect in the front seat of a police car and with a K-9 dog in the back seat, with some form of barrier between them.

Plaintiffs argue that Officer Cross's actions were clearly established as unlawful based on *Bender v. Baylor*, Civil Action No. 2:09cv789-CSC, 2012 WL 1868011 (M.D. Ala. 2012). In *Bender*, a suspect fled after a traffic stop, and an officer used a taser on him. *Id.* at *3. When the suspect fell to the ground and lay there shaking, the officer released his canine on the suspect. *Id.* The suspect was transported to the hospital where he was treated for multiple dog bite wounds. *Id.* The court concluded that issues of material fact existed as to whether the officer was entitled to qualified immunity. *Id.* at *7.

The Court is not persuaded by *Bender* for two reasons. First, *Bender* does not clearly establish any law within the Eighth Circuit. As an unreported district court case outside of the Eighth Circuit, *Bender* could not put police officers in Arkansas on notice that their actions were unlawful. Second, *Bender* does not squarely govern the issue here. *Bender* involved an officer who released his dog on a suspect on the ground after the suspect had been tasered, not an officer who placed a suspect in a police car with an unaccompanied K-9, with the suspect in the front seat

of a police car and with a K-9 dog in the back seat, with some form of barrier between them. *Bender* is therefore factually distinct and does not guide the Court's analysis.

"The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 136 S. Ct. at 308 (emphasis in original; internal quotation marks and citation omitted). "Such specificity is especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* (internal quotation marks omitted). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, —— U.S. ——, 138 S. Ct. 1148, 1153 (2018) (per curiam) (internal quotation marks omitted). "[I]t does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *City of Escondido, Cal. v. Emmons*, —— U.S. ——, 139 S. Ct. 500, 503 (2019) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). The Court concludes that Officer Cross is entitled to qualified immunity on Mr. Ross's excessive force claims related to the K-9 dog bite because it was not clearly established in November 2013 that his conduct violated the Fourth Amendment.

## V. Claims Against The City

Plaintiffs claim that the City violated plaintiffs' rights guaranteed by the Fourth and Fourteenth Amendments "[b]y failing to properly train, supervise and discipline police officers

within its employ" (Dkt. No. 2, at 4).  Defendants argue that plaintiffs cannot present any evidence to support their claims against the City (Dkt. No. 31, at 16).  Plaintiffs argue in response that the City was deliberately indifferent and that it had a custom of not properly outfitting its police vehicles, contributing to the alleged constitutional violations (Dkt. No. 37, at 10).

Because the Court finds that plaintiffs have not established an underlying constitutional violation, the City cannot be liable for any alleged violation.  The Eighth Circuit "has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim."  *Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007) (quoting *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005)).  However, even where "a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee[,]" that fact alone "will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably."  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 406–07 (1997) (italics in original).  Here, the record does not contain any evidence of a facially unlawful city policy or custom.  To survive summary judgment, Mr. Ross and Mr. Davis must demonstrate some municipal action or inaction, taken "with 'deliberate indifference' as to its known or obvious consequences," *id.* at 407 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)), caused their injuries.  *See Szabla*, 486 F.3d at 390–91.  However, nothing in the record enables Mr. Ross or Mr. Davis to meet "the rigorous, deliberate indifference standard of fault."  *Id.* at 395.

Because a municipality cannot be liable on a *respondeat superior* theory, "the pattern of unconstitutional conduct must be so pervasive and widespread so as to have the effect and force of law."  *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (internal quotations and citations omitted).  Notice is the touchstone of deliberate indifference in the context of § 1983 municipal

35

liability.  *See Brown*, 520 U.S. at 409; *Szabla*, 486 F.3d at 392–93.  "A single incident normally does not suffice to prove the existence of a municipal custom."  *Mettler v. Whitledge*, 165 F.3d 1197, at 1205 (8th Cir. 1999).  However, other than the single incident at issue in this case, Mr. Ross and Mr. Davis have submitted no evidence of excessive force by Officer Cross or any other city police officer.  Plaintiffs have therefore failed to establish the City's liability for an unconstitutional policy or custom.

A local government may be subject to § 1983 liability for "inadequate training of its employees," *City of Canton*, 489 U.S. at 388, "where (1) the city's . . . training practices [were] inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by [the city]'; and (3) an alleged deficiency in the . . . training procedures actually caused the plaintiff's injury." *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir.1996) (quoting *City of Canton*, 489 U.S. at 389).

> To satisfy the deliberate indifference standard, a plaintiff must demonstrate:
>
> that in light of the duties assigned to specific officers . . . the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*City of Canton*, 489 U.S. at 390; *see also Brown*, 520 U.S. at 411 (noting that to succeed on a claim for municipal liability the "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a *particular* constitutional or statutory right will follow the decision" (emphasis added)). "In other words, the plaintiff must demonstrate that the city 'had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.'" *Andrews*, 98 F.3d at 1076 (quoting *Thelma D. v. Bd. of Educ.*, 934 F.2d 929, 934 (8th Cir.1991)).

Under § 1983, "a claim for failure to supervise requires the same analysis as a claim for failure to train." *Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir.2007) (citing *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir.1998)).   Neither claim can succeed without evidence the municipality "[r]eceived notice of a pattern of unconstitutional acts committed by [its employees]." *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir.2010).   Mr. Ross and Mr. Davis have not presented any evidence indicating the City had reason to believe, before the events giving rise to this case, that its training or supervision of Officer Cross were inadequate.   Absent some form of notice, the City cannot be deliberately indifferent to the risk that its training or supervision of Officer Cross would result in "a violation of a particular constitutional or statutory right." *Brown*, 520 U.S. at 411.

## VI.     Conclusion

For these reasons, the Court grants defendants' motion for summary judgment (Dkt. No. 29).   The Court denies plaintiffs the relief they seek.   Because the Court has resolved this case in favor of defendants, the Court denies as moot defendants' alternative motion to the extent they seek to have the Court deem facts admitted (Dkt. No. 33).   Judgment will be entered accordingly.

It is so ordered this 30th day of November, 2020.

Kristine G. Baker
United States District Judge